UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:                                           Chapter 11

**S.K. Management of New York, Inc**

                                      **Case No. 1- 22-40603-ess**

Debtor

## DEBTOR'S AMENDED CHAPTER 11 PLAN

ALLA KACHAN, ESQ.
Attorney for Debtor's S.K. Management of New York, Inc
2799 Coney Island Ave, Ste. 202
Brooklyn, NY 11235
Tel: (718) 513-3145
Fax: (347) 342-315
E-mail: alla@kachanlaw.com

## PLAN OF REORGANIZATION

The Debtor, by and through its attorney, Law Offices of Alla Kachan, P.C. pursuant to 11 U.S.C. §1121 et seq., proposes the following Chapter 11 Plan.

S.K. Management of New York, Inc. ("S.K. Management") the above-named captioned debtor and debtor-in-possession ("Debtor") hereby submits this Amended Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. All Holders of Claims who are eligible to vote on the Plan are encouraged to read the Plan and accompanying the Disclosure Statement including all exhibits before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Nothing contained herein shall constitute an offer, acceptance or legally binding obligation of the Debtor or any other party in interest and the Plan is subject to approval of the Bankruptcy court and other customary conditions.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCOLSURE STATEMENT (INCLUDING ALL THE EXHIBITS) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## <u>ARTICLE I</u>
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Rules of Construction

For purposes of this Plan, except as expressly provided herein or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan or any Exhibit. Any term used and not defined in this Plan but is defined in the Bankruptcy Code of the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B.    Definition

**1.1    Administrative Claim** means as Allowed Claim for costs and expenses of administration of the Chapter 11 Case under section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code including: (a) any actual and necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating business and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); and (b) all other claims entitled to administrative claim status pursuant to a Final Order of the Bankruptcy Court and including Profession Fee Claims.

**1.2    Administrative Bar Date** means the last day in which creditors and parties-in-interest can file proof of claim against the Debtors for administrative expenses.

**1.3    Administrative Period** means the period beginning on the Petition Date and ending on the Confirmation Date.

**1.4    Adversary Proceeding** means any and all actions previously commenced, or to be commenced, by the Debtor to recover money or property on behalf of the Debtor's Estate.

**1.5    Allowed Claim** means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Debtor and the Holder of any Claim agree may adjudicate the Claim and any objection thereto), (b) that either has been Scheduled as a liquidated, non-contingent, and undisputed in an amount greater than zero on the Scheduled, or, is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (c) that is expressly Allowed in a liquidated amount in the Plan; provided, however, that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely written request for payment has been made in accordance with applicable bar dates for such requests set by the Bankruptcy Court (if such written request is required) in each case as to which the Debtor, or any other party in interest has not interposed a timely objection or has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

**1.6    Avoidance Actions** means Causes of Action arising under Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547 through 551 and/or 553, or under related state or

federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action; provided, however, that Avoidance Actions shall not be deemed to include those causes of action released, waived and/or discharged pursuant to this Plan or an order of the Bankruptcy Court.

1.7    **Ballot** means each of the ballot forms distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

1.8    **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Chapter 11 Case.

1.9    **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York or any other court with jurisdiction over the Chapter 11 Case.

1.10    **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereinafter amended.

1.11    **Bar Date** means the last day in which creditors and parties-in-interest can file a proof of claim against Debtor.

1.12    **Cash** means the legal tender of the United States of America and equivalents thereof, which may be conveyed by check or wire transfer.

1.13    **Chapter 11 Case** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor.

1.14    **Claims** means a "claim" as defined in section 101(5) of the Bankruptcy Code.

1.15    **Claimant** means the holder of a Claim.

1.16    **Claims Objection Deadline** means the last day for Filing objections to Claims, other than Administrative Claims and Professional Fee Claims, which day shall be not later than sixty (60) days subsequent to the Confirmation Date or with such other time period as may be fixed by the Court.

1.17    **Class** means a category of Holders of Claims, as described in Article II.

1.18    **Closing Date** means the date that Debtor completes all Plan payments and a final decree is entered by the Court.

1.19    **Confirmation** means entry of a Final Order confirming the Plan in accordance with Section 1129 of the Bankruptcy Code.

1.20    **Confirmation Date** means the date on which the Bankruptcy Court entered the Confirmation Order.

**1.21    Confirmation Hearing** means the hearing held before the Bankruptcy Court to consider confirmation of this Plan pursuant to Section 1128(a) and 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

**1.22    Confirmation Order** means the order issued and entered confirming the Plan, pursuant to Section 1129 of the Bankruptcy Code.

**1.23    Consummation of the Plan** means the period by which the Debtor commence distribution under the Plan.

**1.24    Creditor** means all entities and/or individuals holding Claims against the Debtor's estate.

**1.25    Cure Period** means the period of thirty (30) days the Debtor has to cure any default in payments required under the Plan after a Claimant provides written notice to the Debtor and attorneys of the default.

**1.26    Debtor** means S.K. Management of New York, Inc

**1.27    Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by the Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy or any Final Order, or otherwise deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any final Order or under applicable law, or (c) is not Scheduled, and as to which (i) no Proof of Claim has been filed by the Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law, or (ii) no request for payment of an Administrative Claim has been filed by the Administrative Claims Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

**1.28    Disbursing Agent** means the Post-Confirmation Debtor.

**1.29    Disclosure Statement** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code filed by the Debtor in connection with the Reorganization Case, and all Exhibits in connection therewith and any documents delivered in connection therewith, as the same may be amended from time to time by any duly authorized amendments or modification.

**1.30    Disputed Claim** means a Claim, or any portion thereof, designated as disputed,

contingent or unliquidated in the Debtor's Schedules filed in connection with its Reorganization Case, or any Claim against which an objection to the allowance thereof has been interposed and as to which such objection a Final Order has not been entered or any Claim against which the period for bringing such objection as provided hereunder has not expired.

**1.31    Disputed Claim Amount** means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and the Holder of the Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount at which the Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and the holder of the Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to the Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**1.32    Disputed Claim Holder** means the holder of a Disputed Claim.

**1.33    Distribution** means any distribution pursuant to the Plan to the Holders of Allowed Claims.

**1.34    Distribution Date** means the date upon which initial distributions are made by the Disbursing Agent to Holders of Allowed Claims entitled to receive Distribution under the Plan, which shall be thirty (30) days after the Effective Date.

**1.35    Effective Date** means the date of the initial distribution under the Plan which shall occur no later than 30 days after entry of the Confirmation Order.

**1.36    Estate** means the estate of the Debtor created under section 541 of the Bankruptcy Code.

**1.37    Exhibit** means the exhibits filed in support of this Plan or as an appendix to the Disclosure Statement.

**1.38    Extension Period** means the additional ninety (90) days that the Cure period shall be extended in the event of any act of terrorism or God which adversely impacts upon the ability of the Debtor or Reorganized Debtor to satisfy payment obligation under the Plan.

**1.39    Final Order** means an order or judgment of the Bankruptcy Court, or other court

of competent jurisdiction, as entered in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending.

**1.40    General Unsecured Claim** means a Claim that is not an Administrative Claim, Priority Tax Claims, Priority Non-Tax Claim, Secured claim or Professional Fee Claim.

**1.41    Governmental Unit** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.42    Holder** means the legal or beneficial holder of a Claim (and, if used in conjunction with a Class or type of Claim, means a holder of a Claim in such Class or of such type).

**1.43    Impaired** means a Claim or Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.44    Person** means an individual, corporation, partnership, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

**1.45    Petition Date** means March 24, 2022, the date of the commencement of the Debtor's Reorganization Case.

**1.46    Plan** means this document entitled "Plan of Reorganization" including the exhibits and all supplements, appendices, and schedules, either in its current form or as the same may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code and Bankruptcy Rules.

**1.47    Plan Supplement** means, if any, such exhibits, documents, lists or schedules not filed with the Plan but as may be filed in connection therewith within ten (10) days of the Confirmation Hearing.

**1.48    Priority Non-Tax Claim** means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

**1.49    Priority Tax Claim** means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.50    Post-Confirmation Expenses** means all reasonable fees, expenses and disbursements of Professional Person incurred after the Confirmation Date.

**1.51    Professional** means (a) any professional employed in the Chapter 11 Case pursuant to sections 327, 328, or 1103 or otherwise of the Bankruptcy Code and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.52    Professional Fees** means all allowances of compensation and reimbursement of expenses Allowed, or to be allowed pursuant to Section 330 or 331 of the Bankruptcy Code, to any Professional Person retained pursuant to Section 327 of the Bankruptcy Code.

**1.53    Proof of Claim** means proof of claim that must be filed on or before the Bar Date or such other date as prescribed by the Bankruptcy Court.

**1.54    Released Parties** means any of the Debtor and its agents, advisors, attorneys, and representatives.

**1.55    Schedules** mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code and the Bankruptcy Rules, as such schedules have been or may be further modified, amended or supplemented in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

**1.56    Tax Claim** means all or that part of a Claim held by a Governmental Unit for a tax assessed or assessable against the Debtor, including income and employment taxes and any related penalties or interest.

**1.57    Unclassified Claims** means Administrative, Priority and Tax Claims.

**1.58    Unimpaired** means a Claim that is not impaired within the meaning of Section 1124 of the bankruptcy Code.

**1.59    Unsecured Claims** means any Claims which do not qualify as an Administrative Claim, Priority Claim or Secured Claim.

**1.60    Unsecured Creditor** means the holder of an Unsecured Claim.

**1.61    Subordinated Claims** means any Claims which are subject to subordination under section 510 of the Bankruptcy Code

**1.62    Voting Deadline** means the date and time, as fixed by an order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject the Plan must be received in order to be counted.

### C.    Rules of Interpretation

The provisions of the Plan shall control over any descriptions contained in the Disclosure Statement. Where the Plan refers to "any contract, instrument, or other agreement or document created in connection with the Plan," the provisions of such contract, instrument, or other agreement or document shall control over any inconsistency with the terms of the Plan, and the Plan will be interpreted to avoid any inconsistencies with the provisions of such contract, instrument, or other agreement or document.

1.      Without limiting foregoing, the rules of construction set forth in Bankruptcy Code §102 shall apply. The definitions and rules of construction contained herein do not apply to the Disclosure Statement or to the Exhibits to the Disclosure Statement except to the extent expressly so stated in the Disclosure Statement.

2.      The words "herein," "hereto," "hereunder" and others of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection or clause contained in the Plan.

3.      Unless specified otherwise in a particular reference, all references in the Plan to Articles, Sections and Exhibits are references to Articles, Sections and Exhibits of or to the Plan.

4.      Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been amended, restated, modified, or supplemented as of the Effective Date.

5.      Captions and reference to Articles and Sections in the Plan are inserted for convenience only and shall neither constitute a part of the Plan nor in any way affect the interpretation of any provisions hereof.

### D.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### E.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of the State of New York shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

## ARTICLE II

## CLASSIFICATION OF CLAIMS

**A.    Introduction:**

All Claims except Administrative Claims, Priority Tax Claims and Bankruptcy Fees placed in the Classes set forth before below. In accordance with Section 1123(a)(I) of the Bankruptcy Code, Priority Tax Claims have not been classified. A claim is placed in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim falls within the description of the other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is Allowed in that Class and the Claim has not been paid, released or otherwise settled prior to the Effective Date.

**Unclassified Claims**

**1.**    Administrative Claims

**2.**    Priority Tax Claims.

**3.**    Bankruptcy Fees.

**B.    Classes of Claims**

**Classes of Claims**

**Class I (Unsecured Claims) (Impaired)** - Shall consist of the general unsecured claim of Joint Stock Company "Channel One Russia Worldwide" filed in the amount of $3,666,000.00.

The claims filed by Closed Joint Stock Company 'CTC Network', Limited Liability Company 'Global Entertainment TV, Closed Joint Stock Company 'New Channel', Limited Liability Company 'Rain TV-Channel', Closed Joint Stock Company 'TV Darial' will not receive any treatment. On August 10, 2022, the Debtor filed a Motion to Disallow Claim # 3 filed By Closed Joint Stock Company CTC Network (Docket # 85), a Motion to disallow Claim # 4 filed by Limited Liability Company Global Entertainment TV (Docket # 86), a Motion to disallow Claim # 5 filed by Closed Joint Stock Company New Channel (Docket # 87), a Motion to disallow Claim # 6 filed by Limited Liability Company Rain TV- Channel (Docket # 88) and a Motion to disallow Claim Number(s): # 7 filed by Closed Joint Stock Company TV Darial (Docket # 89). It is the Debtor's position that these Creditors have failed to provide both

statutory and evidentiary basis for their claims, as they have summarily failed to attach any supporting documentation to their proof of claims, in violation of Fed. R. Bankr. P. 3001. Further, Closed Joint Stock Company 'CTC Network', Limited Liability Company 'Global Entertainment TV, Closed Joint Stock Company 'New Channel', Limited Liability Copmany 'Rain TV-Channel', Closed Joint Stock Company 'TV Darial' have failed to prove their allegations of FCA § 605(a) or the Copyright Act violations, and thus as per the recommendation by Magistrate Judge Moses, in the decision on the motion for summary judgement as to their claims under the FCA and the Copyright Act, the summary judgment motion was denied in its' entirety.

**Class II – (Equity interest holders)** - Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

Sam Katsman the sole equity interest holder, shall retain his interest in the Debtor following Confirmation, in consideration of a new value contribution, to be made by him as the equity holder, toward the payment of general unsecured creditor claims, as needed.

Sam Katsman, as a Debtor's principal and the sole shareholder, will continue to be employed by the reorganized debtor, without compensation.

## ARTICLE III
## TREATMENT OF CLAIM

Administrative claims consist of the Debtor's duly retained professionals and any other administrative expenses allowed under Section 503 of the Bankruptcy Code. Administrative Claims will include the fees and expenses of the Debtor's Counsel, Alla Kachan, Esq through confirmation which constitutes the full pre-petition retainer, as well as in accumulated post-petition legal fees, in total approximate amount of $40,000.00. The Law Offices of Alla Kachan P.C. received an initial retainer in the amount of $15,000.00.

Wisdom Professional Services Inc. asserts a claim for the fees and expenses as accountants for the Debtor, as unpaid fees through confirmation, in the total approximate amount of $5,000.00. Wisdom Professional Services Inc. received an initial retainer of $1,800.00 prior to filing.

The claims of Debtor's professionals shall be subject to final fee applications pursuant to Bankruptcy Code Section 330 and orders of the Court approving the fees and expenses as sought by this application. Any professional fees shall be paid in full upon approval by the Bankruptcy Court.

All other administrative claims will be paid in full on the Effective Date of the Plan.

### Priority Claims

**Priority Unsecured Claim**) consists of the unsecured priority claim of the New York State Department of Taxation & Finance in the amount $173.92. The claim will be paid in full on the Effective date of the plan.

The unsecured priority claim of the Internal Revenue Service will not receive any treatment since this claim was amended to $0 on 08.19.2022.

### Statutory Bankruptcy Fee

All Bankruptcy fees and charges assessed against the Debtor under 28 U.S. C. § 1930(a)(6) payable to the United States Trustee shall be paid in cash by the Effective Date, with any applicable interest thereon. Thereafter, such fees and any applicable interest shall continue to be paid by the Debtor until Debtor's case is closed by entry of a final decree, converted, or dismissed.

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. § 3717 on all disbursements, including Plan payments and disbursements in and outside the ordinary course of the Debtor's affairs, until the entry of a Final Decree, dismissal of the Chapter 11 Case or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Additionally, the Debtor shall file quarterly Post Confirmation Reports and schedule quarterly post-confirmation status conferences with the Court.

### Classes of Claims

**Class I (Unsecured Claims) (Impaired)** - Shall consist of the general unsecured claim of Joint Stock Company "Channel One Russia Worldwide" filed in the amount of $3,666,000.00. The claim will be paid 1.36% dividend ($49,857.60) in 60 monthly installment payments in the amount of $830.96, commencing on the Effective date of the plan.

The claims filed by Closed Joint Stock Company 'CTC Network', Limited

Liability Company 'Global Entertainment TV, Closed Joint Stock Company 'New Channel', Limited Liability Company 'Rain TV-Channel', Closed Joint Stock Company 'TV Darial' will not receive any treatment. On August 10, 2022, the Debtor filed a Motion to Disallow Claim # 3 filed By Closed Joint Stock Company CTC Network (Docket # 85), a Motion to disallow Claim # 4 filed by Limited Liability Company Global Entertainment TV (Docket # 86), a Motion to disallow Claim  # 5 filed by Closed Joint Stock Company New Channel (Docket # 87), a Motion to disallow Claim # 6 filed by Limited Liability Company Rain TV- Channel (Docket # 88) and a Motion to disallow Claim Number(s): # 7 filed by Closed Joint Stock Company TV Darial (Docket # 89). It is the Debtor's position that these Creditors have failed to provide both statutory and evidentiary basis for their claims, as they have summarily failed to attach any supporting documentation to their proof of claims, in violation of Fed. R. Bankr. P. 3001. Further, Closed Joint Stock Company 'CTC Network', Limited Liability Company 'Global Entertainment TV, Closed Joint Stock Company 'New Channel', Limited Liability Copmany 'Rain TV-Channel', Closed Joint Stock Company 'TV Darial' have failed to prove their allegations of FCA § 605(a) or the Copyright Act violations, and thus as per the recommendation by Magistrate Judge Moses, in the decision on the motion for summary judgement as to their claims under the FCA and the Copyright Act, the summary judgment motion was denied in its' entirety.

**Class II – (Equity interest holders)** - Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders.

Sam Katsman, the sole equity interest holder, shall retain his interest in the Debtor following Confirmation, in consideration of a new value contribution, to be made by him as the equity holder, toward the payment of general unsecured creditor claims, as needed.

Sam Katsman, as a Debtor's principal and the sole shareholder, will continue to be employed by the reorganized debtor, without compensation.

As a result, Class I claims are impaired and are entitled to vote pursuant to §1126(f) of the Bankruptcy Code.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

i.      **Impaired Classes of Claims entitled to Vote**

The Holders of Claim in Class I are entitled to vote to accept or reject the Plan, and the votes of the Holders of claims in said Class will be solicited.

ii.      **Impaired Classes of Claims entitled to Vote**

In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class or Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one- half (1/2) in number of Allowed Claims of such Class that have timely and properly voted.

## ARTICLE V

## MEANS FOR IMPLEMENTATION THE PLAN

**A.**      **Implementing Action**

The Plan will be financed from continuing operating income, reorganized business operations of the Debtor, as well as from funds accumulated in the Debtor's in Possession accounts.

Grigory Davidzon will make supplemental contributions for payments required in the Chapter 11 Plan of Reorganization of Produce Depot USA LLC, without expectation of repayment, and in such amounts as may be necessary to comply with the confirmed plan terms.

**B.**      **Post-Effective Date Costs**

From and after the Effective Date and without further order of the Bankruptcy Court, the Debtor shall pay the fees and expenses of its Professionals in the ordinary course of business including, without limitations, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

**C.**      **Preservation of Causes of Action**

In accordance with Section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in an order of the Bankruptcy Court the Debtor and its Estate shall retain all of the causes of action arising under applicable state laws, including, without limitation, the Causes of Action, Avoidance Actions, if any, and all other causes of action of a trustee and debtor in possession under

the Bankruptcy Code.

## ARTICLE VI
### DISTRIBUTION UNDER THE PLAN

#### A.     The Disbursing Agent(s)

The reorganized Debtors shall act as Disbursing Agent(s) under the Plan, subject to the terms and provisions of the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court or required by the Bankruptcy Code or the Bankruptcy Rules.

#### B.     Cash Payments

Cash payments made pursuant to the Plan will be made on the Effective Date in U.S. Dollars by checks drawn on a banking institution that is an authorized depository in the Eastern District of New York selected by the Debtor or by wire transfer from a banking institution that is an authorized depository in the Eastern district of New York at the option of the Debtor.

#### C.     Transmittal of Distribution

All distributions shall be deemed made at the time such distribution is deposited in the United States mail, postage prepaid. Except as otherwise agreed with the holder of an Allowed Claim or Allowed Interest such distribution shall be distributed by mail to (i) the latest mailing address filed of record for the party entitled thereto or to a Holder of a power of attorney designated by such Holder to receive such distributions or (ii) if no such mailing address has been so filed, the mailing address reflected upon the filed Schedules of Assets and Liabilities or in the Debtor's books and records.

#### D.     Undeliverable Distribution

If any distribution is returned to a disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to the Holder of the Allowed Claim or Allowed Interest on which such distribution was made unless and until the Debtor is notified in writing of such Holder's then-current address, at which time all missed Distributions shall be made to the Holder without interest. Undeliverable distributions shall remain in the possession of

the Debtor until such time as a distribution becomes deliverable or is deemed canceled (as hereinafter provided). Any unclaimed distribution held by Debtor shall be accounted for separately, but the Disbursing Agent shall be under no duty to invest any such unclaimed distribution in any manner. Any Holder of an Allowed Claim or Allowed Interest that does not present a claim for an undeliverable distribution within one hundred eighty (180) days after the date upon which a distribution is first made available to such Holder shall have its rights to such distribution discharged after service by the Debtor with a waiver notice detailing the creditor(s) name and distribution amount, and shall be forever barred from asserting any such Claim or Interest against the Debtor or its property or against any other Person, including the Debtor. All unclaimed or undistributed distributions shall, pursuant to Bankruptcy Code Section 347(b) be the property of the Debtor and shall be treated as determined by the Debtor in its sole and absolute discretion.

### E.      Interest on Claims

Post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim unless otherwise specifically provided for in the Confirmation Order, or required by applicable bankruptcy law.

### F.      Withholding and Reporting Requirements

In accordance with Section 346 of the Bankruptcy Code and in connection with the Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all withholding and reporting requirements imposed by any federal, state, provincial, local or foreign taxing authority. The Disbursing Agent shall be authorized to take any and all actions necessary and appropriate to comply with such requirements. As a condition of making any distribution under Plan, the Disbursing Agent may require the Holder of an Allowed Claim to provide such Holder's taxpayer identification number, and such other information, certification or form as necessary to comply with applicable tax reporting and withholding laws. Notwithstanding any other provision of the Plan, each Person receiving a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of tax obligations on account of any such Distribution.

## ARTICLE VII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing: (i) The Confirmation Order shall have been entered and become a Final Order and shall provide that the Debtor is authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the agreements or documents created in connection with the Plan or effectuate advance or further the purposes thereof; (ii) All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and (iii) The Debtor shall have sufficient Cash to enable all required payments necessary to Confirmation to be made.

If the Effective Date does not timely occur, the Debtor reserve all rights to seek an order from the Bankruptcy Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan be null and void. If the Bankruptcy Court enters an order vacating the Confirmation Order, the time within which the Debtor may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of 30 days after the date the Confirmation Order is vacated, without prejudice to further extensions.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### A.    Time Limit for Objections to Claims

Objections to Claims shall be filed by the Debtor with the Court and served upon each Holder of each of the Claims to which objections are made, not later than sixty (60) days subsequent to the Confirmation Date or with such other time period as may be fixed by the Court.

### B.    Resolution of Disputed Claims

Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretions, without notice to any party in interest.

Notwithstanding any other provision of the Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to the Disputed

Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. To the extent that a Claim is not a Disputed Claim but is held by a Holder that is or may be liable to the Debtor on account of a Cause of Action, no Distributions shall be made with respect to all or any portion of such Claim unless and until such Claim and liability have been settled or withdrawn or have been determined by Final Order of the Bankruptcy Court or such other court having jurisdiction over the matter.

### C.    Distribution after Allowance

Distributions to the Holder of a disputed claim, to the extent that it ultimately becomes an Allowed claim, will be made in accordance with provisions of the Plan that govern distributions to Holders in that Class.

### D.    Estimation

The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

### ARTICLE IX

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejected Contracts and Leases

Except as otherwise provided in the Confirmation Order or the Plan, the Confirmation Order shall constitute an order under Section 365 of the Bankruptcy Code assuming all pre-petition

executor contracts and unexpired leases to which the Debtor is a party, to the extent such contracts or leases are executor contracts or unexpired leases, on and subject to the occurrence of the Effective Date, unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtor, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, or (c) is the subject of a pending motion to assume or reject on the Confirmation Date.

**B.    Bar to Rejection Damages**

If the rejection of an executor contract or unexpired lease gives rise to a Claim by the other party or parties to the contract or lease, the Claim shall be forever barred and shall not be enforceable against the Post-Confirmation Debtor, unless a Proof of Claim is filed and served on the Post- Confirmation Debtor within 30 days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

## ARTICLE XI
### DEFAULT

It shall be an event of default if the Reorganized Debtor fails to make any payment as provided in the Plan.

Upon written receipt from any creditor of notice of default, the Reorganized Debtor shall have a period of thirty (30) days from receipt of such notice to cure such default and during such thirty (30) day period, the creditors shall take no action to terminate this Plan.  If such default is cured by the Reorganized Debtor within said thirty (30) day period, then the Plan shall continue in full force and effect.  Notices of default shall be sent to the Reorganized Debtor and the Debtor's attorneys, Law Offices of Alla Kachan, P.C., by overnight and electronic mail to: Law Offices of Alla Kachan, P.C., 2799 Coney Island Ave, Ste. 202, Brooklyn, NY 11235, alla@kachanlaw.com. If the Reorganized Debtor fails to cure any plan obligations within a thirty (30) day period, the affected Creditor shall be permitted to exercise all rights and remedies under applicable state law with respect to its allowed claims.

## ARTICLE XII
### DISCHARGE AND INJUNCTION

**A.    Discharge of the Debtor**

Upon completion of Plan payments, the Debtor will be receiving a discharge under the provisions of § 1141(d)(1)(A) of the Code, given that: (A) the Debtor's Plan does not provide for the liquidation of all or substantially all of the property of the estate; (B) the Debtor will continue to engage in business operations after consummation of the Plan; and (C) even if this case were a case under chapter 7 of the Bankruptcy Code, the Debtor would not be denied a discharge under § 727(a) of the Code. For the avoidance of doubt, the Debtor is not discharged from any debts specified in section 1141(d)(6) of the Bankruptcy Code. Furthermore, any outstanding claims for U.S. Trustee quarterly fees and any applicable interest thereon are not discharged by the Plan.

**B.    Release by the Debtor**

To the extent permitted by Section 1125(e) of the Bankruptcy Code on the Effective Date, the Debtor and its Estate shall be released unconditionally, and hereby deemed to forever release unconditionally, (i) Debtor's Professionals from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities whatsoever (other than the right to enforce the performance of their respective obligations, if any, to the Debtor under the Plan, and the contracts and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or un matured, known or unknown, foreseen or unforeseen, directly or derivatively, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement provided, however, that notwithstanding the foregoing nothing contained herein is intended to or shall operate as a release of any claims for fraud, willful misconduct, criminal conduct, legal malpractice or gross negligence.

**C. Injunction**

Except as otherwise provided in the Plan, the Confirmation Order shall provide, among other things, that from and after the Effective Date all Persons who have held, hold or may hold Claims against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, its Estate, or any of their property on account of any such Claims: (1) commencing or continuing, in any manner or in any place, any action or other proceeding; (2) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order; (3) creating, perfecting or enforcing any lien or encumbrance; (4) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the

Debtor unless authorized under the Plan; (5) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained in the Plan shall preclude such Persons from exercising their rights pursuant to an d consistent with the terms of the Plan or the Confirmation Order.

### D. Limitation of Liability

Except as otherwise provided in the Plan, the Debtor and its Professionals and any of such parties' successors and assigns, shall not have or incur any claim, action, proceeding, Cause of Action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment or Claim (as defined) in Section 101(4) of the Bankruptcy Code), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un matured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law equity or otherwise to one another or to any Holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or any of their successors or assigns, for any act or omission originating or occurring on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtor, the Chapter 11 Case, negotiation and filing of the Plan or any prior plans, filing Chapter 11 Case, the pursuit of confirmation of the Plan or any prior plans, the consummation of the Plan, the administration of the Plan or the property to be liquidated other than resulting from gross negligence, willful misconduct, fraud, criminal conduct, or legal malpractice as determined by a Final Order of a court of competent jurisdiction, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. Nothing herein shall abrogate the requirements of any applicable professional disciplinary rules.

### E. Terms of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless otherwise provided in this Plan. Upon the Effective Date, the injunction provided in Article XI(D) shall apply.

### **ARTICLE XIII**

## RETENTION OF JURISDICTION

The Court shall retain and have exclusive jurisdiction over Chapter 11 Case for the following purposes:

1. to determine any and all objections to the allowance of claims;

2. to determine any and all pending applications for the rejection or assumption of executor contracts or unexpired leases to which the Debtor is a party or with respect to which it may be liable, and to hear and determine, and if not be to liquidate, any and all Claims arising therefrom;

3. to determine any and all applications, adversary proceedings, and contested or litigated matters, to set aside liens or encumbrances and to recover any preferences, transfers, assets or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state or local law;

4. to consider any modifications of the Plan, any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Code, including the Confirmation Order, to the extent authorized by the Bankruptcy Code or other applicable law;

5. to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, including disputes between or among classes of claimants under the Plan regarding allocations or payments of distribution hereunder;

6. to consider and act on the compromise and settlement of any claim against or cause of action by or against the Debtor or the Debtor's estate;

7. to determine such other matters which may be set forth in the Confirmation Order or which may arise in connection with the Plan, including, but not limited to, extending and time limits provided in the Plan and to implement the transfer of the fee simple interest in the Premises to Debtor;

8. to fix the allowance of compensation of professionals;

9. Enforce all orders previously entered by the Bankruptcy Court; and

10. Enter a Final Decree closing the Chapter 11 Case.

## ARTICLE XIV

## GENERAL PROVISIONS

**A.    Modification and Amendments**

The Debtors may alter, amend or modify the Plan or any Exhibits under Section 1127(a) of the Bankruptcy code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan as defined in Section 1101(2) of the Bankruptcy Code, the Debtor may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court. There will be no post-confirmation modification of the plan absent of notice and a hearing. No post-confirmation modification of the Plan will take place absent notice and opportunity to object.

### B.    Severability

If any provision in this Plan is determined to be invalid, void or unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### C.    Binding Effect

The Plan shall be binding upon and incur to the benefit of the Debtor, all present and former Holders of Claims and their respective successors and assigns.

### D.    Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall insure to the benefit of, any heir, executor, administrator, successor or assigner of that Person.

### E.    Final Decree

Pursuant to EDNY LBR 3022-1, within 14 days following the full administration of the estate, but not later than 18 months following the entry of the order confirming a plan, the Debtor shall file on notice to the United States trustee, an application and a proposed order for a final

decree.

### F.    Post-Confirmation Report

The Debtors shall file post-confirmation reports on the 20th day after the conclusion of the relevant reporting quarter until the case is dismissed, converted, or closed by means of a final decree (whichever happens earlier). The requirement to file post-confirmation reports will commence on the Effective date. The post-confirmation reports shall be in compliance with the forms promulgated by the U.S. Trustee in line with "Procedures for Completing Uniform Periodic Reports in Non-Small Business Cases Filed Under Chapter 11 of Title 11, 85 FR 82905 (2020).

### G.    Notice and Service of Documents

Any notice, request or demand required or permitted to be made or provided to or upon the Debtor under the Plan shall be (a) in writing, (b) served by (i) hand delivery, (ii) overnight delivery service, (iii) first class mail, (iv) email or (v) facsimile transmission, (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed and (d) addressed as follows:

**Law Offices of Alla Kachan, P.C.**
**2799 Coney Island Avenue, Ste. 202**
**Brooklyn, NY 11235**
**Phone: (718) 513-3145**
**Fax:(347)-342-3156**
**alla@kachanlaw.com**

### H.    Plan Exhibits

Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least three business Days prior to the date of the commencement of the Confirmation Hearing. Upon filing, those documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of any document upon request to the Debtor.

### I.    Filing of Additional Documents

On or before substantial consummation of this Plan, the Debtors shall file such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the

terms and conditions of this Plan.

### J.    Effective date of Plan

The Plan shall be effective and binding on the Effective Date. The Effective Date shall be the date of the initial distribution under the Plan which shall occur no later than 30 days after the entry of the Confirmation Order.

The Debtor will file with the Court a notice of the Plan's Effective Date within three business days of the occurrence of such an Effective Date

Within 14 days after the entry of an order confirming a chapter 11 plan, the Debtor shall file on presentment in accordance with Local Bankruptcy Rule 2002-1 a proposed order that shall contain a timetable with the steps proposed for achieving substantial consummation of the plan and entry of a final decree, including resolution of claims and resolution of avoidance and other bankruptcy court litigation outstanding or contemplated.


Dated: Brooklyn, New York

January 30, 2026

*/s/ Sam Katsman*
Sam Katsman, President of S.K. Management of New York, Inc


*/s/ Alla Kachan*
Alla Kachan, Esq.
Law Offices of Alla Kachan, PC
2799 Coney Island Avenue, Suite 202
Brooklyn, NY 11235
Tel.: (718)-513-3145
Fax.: (347)-342-3156